JOHN L. WARD *vs.* SALEM STREET RAILWAY & others.

R., a stockholder in a street railway corporation, at his own expense furnished them with
 ten cars, which they took and afterwards retained possession of; and an agreement for
 the use and possession thereof by them was drawn up and authorized to be executed
 in behalf of the corporation, but never completed. R. afterwards became a director,
 and the corporation having no present means of discharging its obligation to him, the
 president, pursuant to a vote of the directors passed at a meeting at which R. was not
 present, executed an agreement to buy the cars of him for a gross sum, payable in
 monthly instalments, and to pay him at a certain rate for the use of the cars meanwhile.
 The first instalment not being duly paid, R. brought an action against the corporation
 for the whole purchase money and other sums due him, in which the president appeared,
 and, pursuant to a vote of the directors in which R. took no part, and for the purpose of
 giving him security for his claim, agreed in writing with his attorneys that judgment
 should be rendered for him for all the sums sued for; and judgment was rendered and
 execution issued accordingly, and levied upon the franchise of the corporation. Another
 stockholder then requested the president and directors to procure a stay of proceedings
 on the execution and a vacating of the judgment, and, this request not being complied
 with, filed a bill in equity in behalf of himself and other stockholders against the cor-
 poration, and the president and directors, including R., alleging that they "are mem-
 bers of the board of directors;" that the contract for the purchase and use of the cars
 "was unauthorized and void," and even if it was valid, R. was only entitled to recover
 the rent of the cars and the first instalment of the purchase money; that the agreement
 for judgment was fraudulent and corrupt; and that the individual defendants "have for
 a long time, and in disregard of their duty as officers as aforesaid, mismanaged the affairs
 of the corporation and wasted the moneys and injured the credit thereof, and have se-
 cured their reëlection by unlawful means;" and praying for an injunction against the
 payment or satisfaction of the judgment and execution and the sale of the franchise,
 and for the removal of the president and directors from their offices, and the appoint-
 ment of a receiver of the corporate franchise and property. *Held,* that, in the absence
 of proof of any fraud or corruption on the part of the defendants or any advantage to
 the corporation from a stay of proceedings, and of any allegation in the bill that R. was
 a director at any time before it was filed, the bill could not be maintained.

BILL IN EQUITY, filed August 12, 1870, by a stockholder in
the Salem Street Railway, (a corporation created by the Sts.
of 1861, *c.* 63, and 1869, *c.* 164,) "in behalf of himself and
all other stockholders of said corporation, except such as are
herein made defendants," against the corporation, and Abner C,
Goodell, Jr., William Mack, Henry Wheatland, James P. Rob-
inson and Daniel Potter.

The material allegations of the bill were as follows : That the
capital stock of the corporation is $150,000, divided into shares
of $100 each ; that the plaintiff owned 158 shares ; " that said

Goodell is president of said corporation, and said Goodell, Mack, Wheatland and Robinson are members of the board of directors thereof ; " that before January 1, 1870, the corporation had constructed, and owned and operated a street railway in Peabody, Salem and Beverly ; that before January 1, 1870, with a view to substituting one-horse cars for the two-horse cars previously used, and thereby increasing the net earnings of the corporation, Robinson had purchased ten one-horse cars on his own account, but for the use of the corporation, and on or before January 28, 1870, " agreed to lease said cars to said corporation, giving a right to purchase, the first payment of $2000 of purchase money to be made July 1, 1870, and the directors of said corporation authorized said Goodell, as president, to execute an agreement to that effect ; that such an agreement would have enabled the corporation to pay for said cars from the earnings of the road in May and June, when the earnings exceed the expenses, but that said Goodell executed a contract without authority, under which said corporation agreed to hire said cars and finally to purchase the same, and to pay the purchase money as follows : $2000 on May 20, 1870, and $1000 on the first day of each month thereafter until the whole payment shall amount to $10,000 ; and the title of said cars was not to pass to said corporation except as said payments ·vere made ; " that the first payment of $2000 was not made on said contract ; that on May 23, 1870, Robinson brought an action upon said contract in the superior court to recover damages ; " that he was not entitled to recover at all, because said contract was unauthorized and void, and, even if said contract were valid, said Robinson was only entitled to recover the rent of the cars and the first payment of $2000 ; but said Goodell, Mack and Wheatland, being directors of said corporation, in violation of their trust and duty as directors, well knowing that said corporation could not pay at once said debt or any considerable part thereof, and for the purpose of preferring said Robinson and of transferring the franchise of said corporation to him, and of divesting the rights of the other stockholders, without their knowledge or consent, corruptly and in violation of their duty as directors, agreed with said Robinson, who had knowledge of the facts

herein set forth, that he was entitled to recover the full price of all of said cars," and on June 23 Goodell consented to a judgment against the corporation, in favor of said Robinson, for $13,617.45, of which sum $8000 at least was not due or payable at the time the suit was brought, even if said contract was valid ; that on June 25 execution was taken out by Robinson and soon after levied upon the franchise of the corporation ; " that said Goodell, Mack, Wheatland and Robinson have made no attempt to pay said execution, but on the other hand carefully concealed the same from their associate director, William R. L. Ward, and from the stockholders ; " that the plaintiff did not learn of the judgment or execution, until he saw in the newspapers, after the adjournment of said court, that the franchise of the corporation was to be sold on execution on August 16, 1870 ; that said execution was delivered to Potter, a deputy of the sheriff of Essex ; that on July 5 he levied upon the franchise and upon other property of the corporation, (but not upon said ten one-horse cars,) and that the same were to be sold on August 16 ; that most of the stock of the corporation is held in small amounts, and it will be impossible to raise money to pay said execution ; that on August 9 the plaintiff requested the president and directors of the corporation to procure a stay of proceedings on said execution, and to take measures to cause said judgment to be vacated, but they have neglected so to do ; and " that said Goodell, Mack, Wheatland and Robinson have for a long time, and in disregard of their duty as officers as aforesaid, mismanaged the affairs of said corporation, and wasted the moneys and injured the credit thereof, and have secured their reëlection by unlawful means."

The bill prayed for an injunction against the payment or satisfaction of the judgment and execution and the sale of the franchise, and for the removal of the president and directors from their offices, and the appointment of a receiver of the corporate franchise and property, with power to manage and operate the railroad for the best interests of all parties concerned.

Upon the filing of the bill a temporary injunction was issued. The answers, besides objecting to the bill as multifarious, and setting up other defences and qualifying facts, denied many of

the allegations of the bill, and especially all fraud or collusion. The plaintiff filed a general replication, and the case was heard by *Morton*, J., upon the pleadings and proofs, and the whole testimony reported by a commissioner appointed for the purpose in accordance with the thirty-fifth rule in chancery. The judge entered this decree : " Injunction dissolved ; bill dismissed." The plaintiff appealed to the full court, in whose opinion the substance and effect of the testimony upon the questions of fact is stated.

*W. A. Munroe*, for the plaintiff, cited *Peabody* v. *Flint*, 6 Allen, 52, 56 ; *Sears* v. *Hotchkiss*, 25 Conn. 171 ; *Cumberland Coal & Iron Co.* v. *Sherman*, 20 Maryl. 117 ; *Same* v. *Same*, 30 Barb. 553 ; *Butts* v. *Wood*, 38 Barb. 181, and 37 N. Y. 317 ; *Coleman* v. *Second Avenue Railroad Co.* 48 Barb. 371, 390 ; *Dodge* v. *Woolsey*, 18 How. 331, 341 ; *Aberdeen Railway Co.* v. *Blakie*, 1 Macq. 461 ; *Ex parte Hughes*, 6 Ves. 617 ; *Ex parte Lacey*, Ib. 625 ; *Davoue* v. *Fanning*, 2 Johns. Ch. 252, 264, 267 ; *In re Cameron's Coalbrook Railway Co.* 18 Beav. 339, 355 ; *Abbot* v. *American Hard Rubber Co.* 33 Barb. 578 ; *Atwool* v. *Merryweather*, Law Rep. 5 Eq. 464 note ; *In re Agriculturalist Cattle Insurance Co.* Law Rep. 1 Ch. 161, 169, 170 ; *Koehler* v. *Black River Falls Iron Co.* 2 Black, 715, 720, 721 ; *Drury* v. *Cross*, 7 Wallace, 299.

*J. W. Perry*, ( *W. C. Endicott* with him,) for the individual defendants, cited 2 Story Eq. (10th ed.) §§ 1571–1575 ; Story Eq. Pl. § 257 ; 1 Dan. Ch. Pract. (4th ed.) 326–328, 853 ; *Montesquieu* v. *Sandys*, 18 Ves. 302 ; *Hall* v. *Maltby*, 6 Price, 240, 259 ; *Farnum* v. *Ballard Vale Machine Shop*, 12 Cush. 507 , *Stewart* v. *Clark*, 11 Met. 384 ; *Adams* v. *Brown*, 7 Cush. 220.

*S. B. Ives, Jr.*, for the corporation.

GRAY, J. The material facts, so far as they can be gathered from the confused and unsatisfactory evidence offered at the hearing, appear to be as follows : On or about July 1, 1869, James P. Robinson, being a stockholder, but not then a director, in the defendant corporation, at his own expense furnished the corporation with ten cars which they took and ever since retained possession of ; and an agreement for the use and purchase thereof

(the terms of which are not in evidence, but the validity of which is not denied by the plaintiff) was drawn up and authorized to be executed in behalf of the corporation, but was never completed between the parties. Robinson afterwards became a director in the corporation. After the corporation had borrowed money of him to the amount of $2500, and much negotiation had taken place between him and Goodell, the president of the corporation, as to the terms of paying him for the cars, and the corporation having no present means of discharging its obligations to him, Goodell, on May 14, 1870, as president of the corporation, and pursuant to a vote of the directors passed at a meeting at which Robinson was not present, executed with him an agreement in writing, by which the corporation agreed to pay Robinson for the purchase of the cars $10,000, payable $2000 on May 20, 1870, and the rest in successive monthly instalments of $1000 each; and Robinson agreed to give the corporation a bill of sale of one car as soon as $2000 should have been paid, and of an additional car upon the payment of each successive instalment, and a full conveyance and release upon the payment of the whole price; and the corporation further agreed, until such payment for the cars, to pay him, for the use of each car not so paid for, at the rate of $10 a month from July 1, 1869. On May 23, 1870, Robinson brought an action at law against the corporation, returnable at the superior court on the first Monday of June, to recover the sums of $2500, lent them by him, with interest, $1100 for the use of the cars since July 1, 1869, and $10,000 as due under the agreement for the price of the cars. In that action, Goodell appeared for the corporation, and on June 23, pursuant to a vote of the directors in which Robinson took no part, and for the purpose, as Goodell testified, of giving Robinson security for his claim, agreed in writing with Robinson's attorneys that judgment should be rendered for him for all the sums sued for — the greater part of the price of the cars not being then payable — and on June 25 judgment was rendered and execution issued accordingly, and the franchise levied upon and advertised to be sold thereon. Before the sale, the plaintiff in this suit requested the president and directors to attempt to procure a stay

of proceedings on the execution and a vacating of the judgment, and, that request not being complied with, filed this bill.

We have found it unnecessary to consider the objection of multifariousness, because, upon a careful examination of the whole evidence, we are satisfied that the plaintiff has failed to make out a case upon any ground stated in the bill. As our conclusion depends mainly upon the decision of questions of fact, it may be very briefly stated.

It does not appear that the corporation had any other means of satisfying any part of the claim of Robinson, the whole consideration for which the corporation had received and enjoyed; or that it would have gained anything but delay and increased expense, by obliging him to bring separate actions for successive instalments as they should become payable under the contract, instead of allowing him to take one judgment for the whole amount due him.

The allegations of fraud and corruption and concealment are not sustained by the evidence.

The allegation that the president executed the contract with Robinson without authority is disproved by the records of the corporation.

The ground, taken in the argument, that the transactions complained of were void because Robinson was a director in the corporation when they took place, is not set up in the bill, which shows only that he was a director when the bill was filed, not at any previous time. *Decree dismissing the bill affirmed.*